# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE DIVISION

DARREL GRANT LeDEE                     CIVIL ACTION NO. 07-1190

VS.                                    SECTION P

WARDEN, WINN CORRECTIONS CENTER   JUDGE MELANÇON

                                       MAGISTRATE JUDGE METHVIN

<u>REPORT AND RECOMMENDATION</u>

Louisiana prisoner Darrel Grant LeDee filed this *pro se* petition for writ of *habeas corpus* under 28 U.S.C. §2254 on July 17, 2007.  LeDee attacks his 2004 convictions for armed robbery in the Fifteenth Judicial District Court, Lafayette Parish.  This matter has been referred to the undersigned for review, report and recommendation in accordance with 28 U.S.C. §636 and the standing orders of the court.  For the following reasons it is recommended that the petition be **DENIED** and **DISMISSED WITH PREJUDICE.**

### *Background*

On November 5, 2001, while incarcerated in the St. Landry Parish jail on charges of simple burglary, petitioner was identified as a suspect in a Lafayette Parish armed robbery. On that date, petitioner gave an inculpatory statement to Detective Kendal Gibson of the Lafayette Police Department. [doc. 7, pp. 29-38]  On December 18, 2001, a Bill of Information was filed in the Fifteenth Judicial District Court charging petitioner with two counts of armed robbery and two counts of aggravated kidnapping.  [Exhibit A, doc. 1-4, p. 5; doc. 7, p. 15]

2

In due course, both petitioner and his court-appointed attorney filed Motions to Suppress petitioner's confession. The motions were denied following a hearing on February 27, 2003. [doc. 1-4, pp. 16-34; doc. 1-5, pp 1-33; doc. 7, p. 11;  doc. 7-3, pp. 3-54][1]

On April 26, 2004 petitioner pled guilty to two counts of armed robbery pursuant to a plea agreement.  The aggravated kidnapping charges were dismissed and petitioner was sentenced to concurrent 20 year sentences on the armed robbery charges. As an additional component of the plea agreement, petitioner was permitted to appeal the denial of his motion to suppress. [Exhibit C, doc. 1-4, p. 3; doc. 7, p. 14 (court minutes); doc. 7, p. 16 (plea form); doc. 5, pp. 9-32; doc. 7-2, pp. 4-28 and 29-53]

On April 27, 2004 petitioner filed an appeal. [Exhibit C, doc. 1-4, p. 3; doc. 7-2, pp. 1-3] Appellate counsel was appointed and briefs were filed by counsel and petitioner in the Third Circuit Court of Appeals.  Prior to the decision by the Third Circuit, the appeal record was supplemented to provide the transcript of the Motion to Suppress. [doc. 7-3, pp. 1-54] On April 6, 2005 petitioner's conviction was affirmed in a published opinion of the Third Circuit Court of

---

[1] According to the court minutes, petitioner did not appear for his scheduled arraignment on January 15, 2002 and therefore a fugitive warrant was issued for his arrest. [doc. 7, p. 8] On May 7, 2002 counsel was appointed, petitioner was arraigned and he entered a not guilty plea. [doc. 7, p. 8] On July 11, 2002 petitioner appeared in court with his attorney for a pre-trial conference. His attorney moved to defer the matter to the trial docket. [doc. 7, p. 9] On July 18, 2002 petitioner's court-appointed counsel filed a motion to suppress petitioner's confession. [Exhibit C, doc. 1-4, p. 3; doc. 7, pp. 24-25] On August 5, 2002 petitioner failed to appear for a previously scheduled hearing and a bench warrant was issued for his arrest. [doc. 7, p. 9] On October 31, 2002, petitioner again did not appear for a scheduled court appearance and another bench warrant issued. [doc. 7, p. 10] On December 13, 2002 petitioner appeared in court to answer to the bench warrants. He was given a later court date and advised to return. [doc. 7, p. 10] On January 13, 2003 petitioner appeared in court; at the request of his attorney, the hearing scheduled for that date was continued to another date. [doc. 7, p. 10] Petitioner  filed a *pro se* motion to suppress on February 6, 2003. [doc. 7, p. 41]  On April 28, 2003 petitioner was present in court; his trial was reset for April 30, 2003; on April 30, his attorney moved to continue the trial to August 2003. [doc. 7, p. 12] On August 18, 2003 petitioner failed to appear and another bench warrant issued. [doc. 7, p. 13] On January 12, 2004 petitioner again did not appear in court; his attorney, however moved to reset the matter for trial on January 13. On that date, petitioner again did not appear and the matter was continued. [doc. 7, p. 13]

3

Appeals.  *State of Louisiana v. Darrel G. LeDee*, 2004-1128 (La. App. 3 Cir. 4/6/2005), 900 So.2d 246, 251-52, rehearing denied, 5/18/2005. [See also Slip Opinion doc. 10, pp. 36- 48]

On some unspecified date petitioner filed a writ application in the Louisiana Supreme Court.[2]  On February 17, 2006 his writ application was denied. *State of Louisiana v. Darrel Grant LeDee*, 2005-1966 (La. 2/17/2006), 924 So.2d 1011. [see also doc. 10, p. 31][3]  Petitioner did not seek further direct review in the United States Supreme Court. [doc. 1-1, paragraph 9(h)][4]

On September 6, 2005, while his application for writs was still pending on direct review in the Louisiana Supreme Court, petitioner filed a *pro se* Application for Post Conviction Relief in the Fifteenth Judicial District Court, raising the following claims for relief:  (1) ineffective assistance of counsel based on counsel's failure to conduct an adequate pre-trial investigation and file proper motions; (2) the plea bargain was induced with an unlawful bill of information and false pretext; (3) the limitations on commencement of trial had expired when petitioner entered his plea of guilty; (4) double jeopardy; and, (5) improper joinder of offenses in the Bill

---

[2]  Despite repeated requests [see docs. 4, 6, and 8] neither the petitioner nor the respondent have provided a copy of petitioner's writ application on direct review. Therefore, it is impossible to determine when the pleading was filed and what claims were presented.

[3] On March 21, 2007 petitioner received a letter from the Clerk of the Louisiana Supreme Court stating that writs were denied in case number 2005-KO-1966 on February 17, 2006 and the copy of the judgment that was mailed to petitioner was returned to sender. [doc. 1-4, p.1]

[4]  Meanwhile, on or about April 4, 2005, petitioner requested various transcripts and court documents from the Lafayette Parish Clerk of Court. On August 17, 2006 he wrote a letter to the Clerk "appealing" the denial of his request. On or about September 1, 2006, the letter was construed as a Motion for Appeal and denied as untimely. [doc. 10, p. 26] On or about April 28, 2006, petitioner filed a writ application in the Third Circuit which was assigned Docket Number KH 06-00588. [doc. 10, p. 29] On May 17, 2006 the Third Circuit denied writs noting,

"With respect to the records request Relator submitted to the District Attorney on or about April 1, 2005, Relator has failed to comply with the procedure set forth in La. R.S.44:35 and the Louisiana Code of Criminal Procedure. As to Relator's Freedom of Information requests, this court does not have jurisdiction over those requests. 5 U.S.C.A. §552a. Accordingly, Relator's petition for writ of mandamus is denied."*State of Louisiana v. Darrel G. Ledee*, No. KH 06-00588. [doc. 10, p. 28]

4

of Information. [doc. 10, pp. 49-122] On November 4, 2005 petitioner's application for post-conviction relief was denied and written reasons of judgment were provided to him on November 10, 2005. [Exhibit D, doc. 1-4, pp. 6-11]

On November 29, 2005 petitioner submitted a Notice of Intent to seek Writs seeking review of the November 4, 2005 judgment of the district court. [doc. 10, pp. 33-35] On December 7, 2005 petitioner filed his writ application in the Third Circuit Court of Appeals; it was assigned Docket Number KH 05-01516.  On April 6, 2006, the Third Circuit denied writs finding "... no error in the trial court's ruling." *State of Louisiana v. Darrel G. Leedee*, No. KH 05-01516 (La. App. 4/6/2006). [doc. 10, p. 30]

On some unspecified date petitioner filed a writ application in the Louisiana Supreme Court seeking review of the Third Circuit's April 6, 2006 judgment.  The pleading was metered on May 26, 2006; it was received and filed in the Louisiana Supreme Court on June 19, 2006 and assigned Docket Number 2006-KH-1568. [doc. 10, p. 27][5] On March 30, 2007 the writ application was denied. *State of Louisiana ex rel. Darrell Grant LeDee v. State of Louisiana*, 2006-1568, 953 So.2d 63. [see also doc. 1-4, p. 4; doc. 10, p. 5]

On March 15, 2007 petitioner filed a *pro se* application for writ of *habeas corpus* in the Fifteenth Judicial District Court. Petitioner claimed that he was denied the effective assistance of counsel when counsel failed to investigate petitioner's competency to stand trial and the viability of an insanity defense.  He also claimed that he was incompetent at the time of the plea and that his plea was coerced and involuntary and that he was forced to take the plea by his attorney and

---

[5] Despite repeated requests [see docs. 4, 6, and 8] neither the petitioner nor the respondent have provided a copy of this writ application. Therefore, it is impossible to determine when the pleading was filed and what claims were presented.

the court. [doc. 10, pp. 11-23] On April 5, 2007 his pleading, which was construed as an application for post-conviction relief,  was denied by the trial court.  The court dismissed the application as successive as defined by La. C.Cr.P. art. 930.4(D) and (E). The court also addressed the merits of petitioner's competency and coercion claims and determined that petitioner was not coerced and that he was "clearly competent." [doc. 10, pp. 7-10] Notice of Judgment was provided to petitioner on April 27, 2007. [doc. 10, p. 6]

Petitioner filed the instant petition for *habeas corpus* on July 17, 2007.  He argues the following claims for relief: (1) ineffective assistance of counsel; (2) coerced and induced plea; (3) time limitations on commencement of trial had expired; (4) double jeopardy violation; (5) improper joinder of offenses; and,  (6) denial of motion to suppress. [docs. 1-1 and 1-3]

### Law and Analysis

### 1. Initial Review

Before reaching the merits of a *habeas* claim, the court conducts a preliminary review of the pleadings and exhibits in order to determine whether the petitioner has exhausted all available state remedies prior to filing his petition in federal court;[6] whether the petition is time-

---

[6] *Habeas* petitioners cannot collaterally attack  state court convictions in federal court until all available state court remedies have been exhausted.  *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Minor v. Lucas,* 697 F.2d 697 (5th Cir. 1983).  This requirement is not a jurisdictional bar but a procedural one erected in the interest of comity providing state courts first opportunity to pass upon and correct alleged constitutional violations.  *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438, 443 (1971); *Shute v. Texas,* 117 F.3d 233 (5th Cir. 1997).  See also, 28 U.S.C. § 2254(b)(1)(A) and (B)  – "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – the applicant has exhausted the remedies available in the courts of the State; or there is an absence of available State corrective process; or circumstances exist that render such process ineffective to protect the rights of the applicant."

6

barred by the provisions of 28 U.S.C. § 2244(d)(1);[7] or whether any of the claims are subject to the procedural default doctrine.[8]

During the course of the initial review, the undersigned requested and obtained the trial and post-conviction records of the Fifteenth Judicial District Court. [see docs. 7 and 10] Based upon these records, it appears that petitioner's federal petition was filed within the limitations period described by 28 U.S.C. §2244(d). It also appears that petitioner's claims were addressed on the merits by the Louisiana courts and therefore, none of the claims were dismissed as procedurally defaulted.  However, as noted above, the records provided by the State do not contain copies of the petitioner's writ applications to the Louisiana Supreme Court on direct and collateral review [see footnotes 1 and 5*, supra*], therefore, it is impossible to determine from the available record whether petitioner exhausted his federal claims by presenting those claims in a procedurally correct manner to the Louisiana Supreme Court.

---

[7] "A 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation shall run from the latest of –

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review..."

\*        \*        \*

The time during which a properly filed application for State post-conviction or other collateral review ... is pending shall not be counted toward any period of limitation under this subsection."

[8] The procedural default doctrine bars federal *habeas corpus* review when a state court declines to address a petitioner's federal claims because the petitioner has failed to follow or has been defaulted by a state procedural rule. *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 2553-54, 115 L.Ed.2d 640 (1991). "[I]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal *habeas* review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* at 750-51. This doctrine ensures that federal courts give proper respect to state procedural rules. *Id.* Furthermore, the doctrine presumes that a state court's express reliance on a procedural bar functions as an independent and adequate ground in support of the judgment. *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1996).

7

Nevertheless, Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts provides that following examination of the pleadings by the court, "If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified."   Since exhaustion is not a jurisdictional bar, and since the available record now before the court clearly establishes that petitioner is not entitled to relief, it is recommended that the application be summarily dismissed for the reasons that follow.

## 2. Standard of Review

This petition was filed  after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), therefore federal *habeas* review is governed by the provisions of the AEDPA, specifically 28 U.S.C. §§ 2254(d)(1) and (2) which define the standard for review.

Under the AEDPA, *habeas* relief is not available to a state prisoner on a claim which was adjudicated on the merits in State court proceedings unless the adjudication of the claim – "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1) and (2).

Questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), while pure questions of fact are reviewed under § 2254(d)(2). *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir.2000), *cert. denied*, 532 U.S. 1039, 121 S.Ct. 2001, 149 L.Ed.2d 1004 (2001).

The state court's decision is contrary to federal law within the meaning of § 2254(d)(1) if the state court applied a rule contradicting the governing law set forth in the Supreme Court's

8

cases, or the state court "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

A state court's factual findings constitute "an unreasonable application of clearly established" Supreme Court precedent if the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08.

The inquiry into the issue of "unreasonableness" is objective. *Id.* at 409-10. A state court's <u>incorrect</u> application of clearly established Supreme Court precedent is not enough to warrant federal *habeas* relief – the application must also be <u>unreasonable</u>. *Id.* at 410-12.

The state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1). In order to obtain *habeas* relief on the ground that the state court's decision was based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the petitioner must rebut by clear and convincing evidence the presumption that the state court's factual findings are correct. See *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir.2000).

"[U]nder the deferential standard of AEDPA, [federal courts] review only the state court's decision, not its reasoning or written opinion, to determine whether it is contrary to or a misapplication of clearly established federal law." *Catalan v. Cockrell*, 315 F .3d 491, 493 (5th Cir.2002), citing  *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir.2002)(en banc).

9

All of petitioner's federal claims were adjudicated on the merits by either the Third

Circuit Court of Appeals on direct review, or the Fifteenth Judicial District Court on collateral

review, and therefore the deferential standards of review outlined above must be utilized.

### 3. Claims 1 - 5

#### A.    Claims 2 – 5 (Unlawful Bill of Information; Expiration of Statutory Limits on Trial; Double Jeopardy; Improper Joinder of Offenses)

Petitioner argues that the Bill of Information was deficient because it charged two counts

of aggravated kidnapping, which under Louisiana law, can only be charged by Grand Jury

indictment. He contends that the Bill of Information violated Louisiana law which prohibits the

joinder of offenses for which different modes of trial are prescribed.  He also contends that the

statutory limitations on trial had expired, that his prosecutions in Lafayette and St. Landry Parish

amounted to double jeopardy and that the joinder of the aggravated kidnapping, and that the

armed robbery charges violated the prohibition against double jeopardy.   [doc. 1-3, pp. 3-11]

All of these claims were argued in petitioner's Application for Post-Conviction Relief.  [doc. 10,

pp. 49-122]

Claims 2 -5 are clearly subject to dismissal since all non-jurisdictional defects are waived

by the entry of a valid guilty plea. *Gilbert v. Anderson,* 116 F.3d 1476 (5th Cir. 1997), citing

*Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir.1983).  Jurisdictional defects are those which totally

deprive the court of jurisdiction.  *R.F.C. v. Prudence Securities Advisory Group*, 311 U.S. 579,

61 S.Ct. 331, 85 L.Ed. 364 (1941).  Claims 2, 3, 4, and 5 are non-jurisdictional issues which

were waived by petitioner's guilty plea and are subject to dismissal on that basis.  Further,

Claims 2 - 4 argue violations of Louisiana law and federal *habeas corpus* relief is available only

10

to those in custody in violation of the Constitution and laws of the United States. See 28 U.S.C. §2254.

In the alternative, these claims, which were argued in petitioner's Application for Post-Conviction Relief [doc. 10, pp. 49-122], were dismissed on the merits by the Fifteenth Judicial District Court on collateral review. Thus, to the extent that further review of these claims is necessary, the court must apply the deferential standard of review as outlined above.

As to Claim 2, petitioner is, of course, correct in his assertion that the crime of aggravated kidnapping must be charged *via* Grand Jury indictment. The offense is punishable by a sentence of life imprisonment [see La. R.S.14:44] and, under Louisiana law, "[a] prosecution for an offense punishable by ... life imprisonment, shall be instituted by indictment by a grand jury..." [La. C.Cr.P. art. 382(A).] Nevertheless, as noted by the Louisiana district court,

> The two counts of aggravated kidnapping, however, were subsequently dismissed by the District Attorney as part of the Petitioner's plea bargain agreement. Therefore, the issue of whether the aggravated kidnpping charges could have been dismissed through a Motion to Quash is moot. The Petitioner also argues that the two counts of aggravated kidnapping are part of a 'baseless prosecution' because the charges had not been presented to a grand jury for indictment. The Petitioner maintains that it was the threat of prosecution from these two counts which ultimately induced him into entering the plea bargain agreement. If aggravated kidnapping charges had been quashed ... the District Attorney would not have been prevented from presenting the case to a grand jury, and obtaining an indictment. The grant of a Motion to Quash would not bar a subsequent prosecution by grand jury indictment against Petitioner on those same charges. The agreement ... to dismiss the aggravated kidnapping charges ensured that the charges would not be brought against Petitioner by subsequent grand jury indictment. Therefore there is no 'false inducement' of the plea. [doc. 1-4, pp. 8-9]

Petitioner has not shown that these findings of fact and conclusions of law were unreasonable. The record supports, and petitioner admits, that the aggravated kidnapping charges

were ultimately dismissed prior to conviction and therefore, as noted by the trial court, the claim was moot.

Further, the trial court's finding that an indictment could have been obtained based on the evidence of record is also supported by the record.  Petitioner admitted to kidnapping his victims in the statement he gave to Detective Gibson on November 5, 2001.[9] There was ample evidence in this confession alone to establish probable cause to support an indictment for aggravated kidnapping.

Likewise, with respect to Claim 3 – Expiration of the Limitations upon Trial –  the trial court dismissed this claim based upon the court's calculation that petitioner was indeed tried within the two year period of limitation demanded by La. C.Cr.P. art. 578. As noted by the court, the Bill of Information was filed on December 18, 2001 and petitioner pled guilty on April 26, 2004. While this is a period in excess of two years, the record, according to the judge, established that petitioner's various motions to continue suspended the running of the limitations period from January 13, 2003 to April 28, 2003 and from April 30, 2003 to August 13, 2003. Thus, according to the judge, only twenty-one months and six days of the twenty-four month elapsed. [doc. 1-4, pp. 9-10] This finding is also supported by the record.[10]

With regard to Claim 4 – Double Jeopardy –  it does not appear that the trial court fully addressed the double jeopardy claim raised by petitioner. Petitioner contends that "... the District

_____

[9] Petitioner admitted to Det. Gibson that when he confronted his victims, he brandished a firearm and forced his victims to drive to an ATM at gunpoint where they were then forced to withdraw money which was taken by the petitioner to secure the victim's release.[doc. 7, pp. 29-38] La. R.S.14:44 defines aggravated kidnapping as "[t]he forcible seizing and carrying of any person from one place to another ... with the intent thereby to force the victim ... to give up anything of ... value ... in order to secure a release of the person under the offender's actual control..."

[10] See Court Minutes, doc. 7, pp. 8-14. In addition to the continuances sought by the defendant, the record also establishes that on several occasions petitioner did not appear in court as he was directed.

12

Attorney of Lafayette Parish convicted him of armed robbery using the same evidence (gun) in

which he was already convicted of that same evidence (gun) in St. Landry Parish..." He also

claims that his prosecution for both aggravated kidnapping and armed robbery were violative of

the prohibition against double jeopardy because the latter "... was based on LeDee's actions

while perpetrating the aggravated kidnappings." [doc. 1-3, pp. 8-9]

These claims were raised in petitioner's application for post-conviction relief; however,

the trial judge addressed only the "same evidence" argument and noted:

> The Petitioner made no showing that these two convictions arose out of the same
> offense. However, the offense committed in Lafayette Parish can only be
> prosecuted in that parish. In the factual basis for the plea, the Petitioner admits
> both armed robberies were committed in Lafayette Parish ... Therefore, Petitioner
> could not have been prosecuted for these armed robberies in St. Landry Parish.  If
> St. Landry Parish prosecuted him for these offenses which both the State and
> Petitioner admit were committed in Lafayette Parish, Petitioner's objections relate
> to the proceedings in St. Landry Parish. However, if the Petitioner used the same
> gun to commit another offense in St. Landry parish, the use of the same gun in
> separate offenses in different parishes does not constitute double jeopardy.

[doc. 1-4, p. 10] With regard to this aspect of the Double Jeopardy claim, the state court's

conclusion has not been shown to be unreasonable. Petitioner's definition of the "same evidence

test" is absurd. He suggests that he may be permitted to commit any number of armed robberies

using the same weapon and that he will thereafter be free from all prosecution save for one of the

armed robberies.   The mere overlap in proof between two prosecutions does not establish a

double jeopardy violation. *Dowling v. United States*, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d

708 (1990).

The state court did not address petitioner's second double jeopardy theory.  However, it

is clearly without merit and does not provide a basis for federal *habeas corpus* relief. The

Double Jeopardy Clause of the Fifth Amendment protects against a second prosecution for the

13

same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. See *Brown v. Ohio*, 432 U.S. 161, 165 (1977); *Blockburger v. United States*, 284 U.S. 299 (1932). Petitioner  was not subjected to a second prosecution.  He also has not shown that he received multiple punishments for the same offense. Further, even had he been convicted of armed robbery and aggravated kidnapping, such convictions do not violate the Double Jeopardy Clause since each offense contains an element of proof not shared by the other.  As noted by the Court in *Blockburger v. United States*, *supra*, at p. 304, "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not." Thus, if each crime requires proof of a fact that the other does not, the *Blockburge*r test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes. *United States v. Fisher*, 106 F.3d 622, 632 (5th Cir.1997).

La. R.S. 14:44 defines aggravated kidnapping as "[t]he forcible seizing and carrying of any person from one place to another ... with the intent ... to force the victim ... to give up anything of ... value, in order to secure the release of the person under the offender's ... control...". La. R.S. 14:64 defines armed robbery as "... the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation , while armed with a dangerous weapon."  In this case, petitioner admitted to robbing cash from his victims at gun point THEN forcing them to accompany him to an ATM to obtain more funds. [see doc. 7, pp. 29-38; at p. 34, "Okay, When the guy comes up you're across the street in the bushes. You come out, show him your gun. Tell him get back in the car.

14

Y'all drive somewhere to get what currency is in his money bag. From there he doesn't have not a lot of money in there cause I don't think they give him a lot of money to travel with. He takes you to his bank ... and removes currency."] His double jeopardy claims are without merit both factually and legally.

Finally, with regard to Claim 5 – Improper Joinder of Offense –  the state district court also noted that this issue was moot since petitioner pled guilty to two counts of armed robbery and the two counts of aggravated kidnapping had been dismissed. [doc. 1-4, p. 10] Of course, petitioner is and was incorrect in his assertion that it was improper to join the armed robbery and aggravated kidnapping charges in a single bill of information. Petitioner implies that joinder was improper because those offenses are not "... triable by the same mode of trial..." as required by La. C.Cr.P. art. 493.  However, that is not correct. Both aggravated kidnapping and armed robbery are necessarily punishable by a sentence of confinement at hard labor; neither are punishable as capital offenses (see La. C.Cr.P. art. 933) and therefore both rely on the same mode of trial – a jury comprised of twelve, ten of whom must concur in order to reach a verdict. See La. C.Cr.P. art. 782. Further,  as noted by the Judge of the Fifteenth Judicial District, this "defect" was mooted by petitioner's guilty plea and the dismissal of the kidnapping charges.

Finally, petitioner argues that these cumulative errors were not mooted by the dismissal of the kidnapping charges because the presence of those charges "induced and coerced [petitioner] to surrender his constitutional rights." [doc. 1-3, p. 7] This argument fails to take into account the very nature of the plea agreement.  "The essence of a plea agreement is that both the prosecution and the defense make concessions to avoid potential losses." *Hughey v. United States*, 495 U.S. 411, 421, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990).

15

In short, petitioner has not shown that the State court's dismissal of Claims 2 -5 was based upon an unreasonable determination of the facts or an unreasonable application of law and therefore dismissal of these claims is recommended.

### B. Ineffective Assistance of Counsel

Petitioner claims that his court-appointed attorney rendered ineffective assistance when he failed to file motions to quash based on the alleged defects noted above in  Claims 2-5. This claim was also raised in the Louisiana courts on collateral review.

In denying relief on this claim, the Fifteenth Judicial District Court, cited *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) and made certain observations regarding whether counsel's performance was deficient and if so, whether petitioner had been prejudiced by the allegedly deficient performance.  [doc. 1-4, pp. 7-8]

In citing  *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), the State court relied on the appropriate United States Supreme Court jurisprudence. In that case, the Court held "... that the two part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58.  Thus, under both *Hill* and *Strickland*, in order to establish ineffective assistance of counsel, a petitioner who attacks his guilty plea raising a claim of ineffective assistance of counsel must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984) . To demonstrate deficiency he must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Judicial scrutiny of counsel's performance must be highly deferential, and courts must indulge in a strong presumption that counsel's conduct fell

16

within the wide range of reasonable professional conduct. *Id.* at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

In the context of guilty pleas, the "prejudice" requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  Thus, petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty." *Id.* A failure to establish either deficient performance or prejudice defeats the claim. *Strickland*, 466 U.S. at 697.

The state court judge applied these principals and  found that the performance of trial counsel was not deficient. As noted above, petitioner claimed that his attorney's performance was deficient based upon his failure to quash the Bill of Information based on the four other grounds raised in the application for post-conviction relief.  She noted, "Since all of these claims are without merit, as discussed below, the failure of counsel to pursue non-meritous [sic] motions is not a basis for a claim of ineffective assistance of counsel." [doc. 1-4, pp. 7-8]

Even though the State court judge found no deficiency in the performance of counsel, she also looked to the prejudice prong of the *Strickland/Hill* analysis. In addressing this issue, the court noted, "The transcript of the *Boykin* hearing, as well as the Plea Agreement Form, reveal that the Petitioner discussed the case with his attorney, understood the ramifications of his plea and was offered ample opportunity to clarify any misunderstandings... Furthermore, when Petitioner entered his plea, he admitted to committing two counts of aggravated [sic] robbery (*Boykin* transcript p. 18, ln. 7-15) and he knew he could receive a sentence between 10 and 99

17

years without benefit of parole, probation, or suspension of sentence. (*Boykin* transcript, p. 4, ln. 30 through p. 5, ln. 2). He was also informed of his right to go to trial and of the fact the State would be required to prove his guilt beyond a reasonable doubt. (*Boykin* transcript, p. 13, ln. 5-24). Based on the Petitioner's unequivocal answers and responses during his *Boykin* examination, and the lack of merit to the motions Petitioner contends his attorney should have pursued, there is no basis to claim that counsel made any errors nor is there any basis to claim that counsel's errors caused him to enter the plea rather than insisting on going to trial." [doc. 1-4, pp. 7-8]

Petitioner could have been charged and probably convicted of two counts of aggravated kidnapping.  Had that occurred, he would have been required to serve at least one and perhaps two consecutive life sentences without benefit of parole.  On the other hand, at the very least, petitioner faced trial on two counts of armed robbery with a maximum sentence exposure of 198 years without benefit of parole. In light of the overwhelming evidence of his guilt – his confession to two armed robberies and two aggravated kidnappings – petitioner cannot seriously contend that "but for" the alleged errors of counsel, he would have insisted on going to trial and thus being exposed to spending the rest of his life behind bars.

Petitioner has not shown that the State court's findings of fact and conclusions of law are unreasonable.  Therefore dismissal of Claim One is recommended.

### 4. Claim 6 – Denial of Motion to Suppress

Petitioner claims that the trial court erred when it denied his Motion to Suppress because "... the evidence clearly indicated that promises were made to Darrell LeDee, he ended the interrogation by exercising his Fifth Amendment right to silence by leaving the interrogation

18

room and his statements to Detectives were coerced by the conversations he had with Detective

Ortego and Detective Gibson prior to the statement being taped." [doc. 1-3, p. 11] The trial

court, of course denied petitioner's Motion to Suppress and petitioner was permitted to appeal

the denial of the Motion to Suppress.  Louisiana's Third Circuit Court of Appeal reviewed the

transcript of the Motion to Suppress and ruled on the merits of the claim as follows:

> Defendant signed a waiver of rights form and confessed to police. In argument to
> this court, the Defendant alleges he requested an attorney and that police made
> promises regarding his sentence. In his pro se brief, the Defendant argues that he
> would not have given the statement if he was not influenced and persuaded by
> Detective Ortego; therefore, the statement was obtained by psychological
> coercion. Defendant also contends that because the detectives did not go to the
> District Attorney's Office and use their influence to procure a light sentence for
> him, he was denied a fair trial. Additionally, Defendant alleges his statement was
> not voluntary and was given under duress when detectives intentionally
> misrepresented facts or lied in order to scare him. Lastly, Defendant alleges he
> was told by detectives that he was visible on a videotape from a bank.
>
> Upon a review of the record, we find Defendant's testimony conflicts with that of
> both Chief Gibson and Detective Ortego. Both officers testified Defendant did not
> mention an attorney. Additionally, Chief Gibson testified Defendant mentioned a
> reduced sentence during the interview; however, Chief Gibson did not promise
> that he would go to the District Attorney's Office on behalf of Defendant. Based
> on the conflicting testimony of the officers and the Defendant, we find the trial
> court made a credibility determination and chose to believe the testimony of the
> officers. We cannot say the trial court's ruling was unsupported by the evidence.
> Additionally, there is no evidence in the record to support the Defendant's
> assertion that Detective Ortego used psychological intimidation to influence him
> to give a statement. Defendant was not denied the right to a fair trial; he
> voluntarily entered a plea of guilty in this matter. Accordingly, these assignments
> lack merit.

*State of Louisiana v. Darrel G. LeDee*, 2004-1128 (La. App. 3 Cir. 4/6/2005), 900 So.2d 246,

251-52, rehearing denied, 5/18/2005. [See also Slip Opinion doc. 10, pp. 36-47; p. 48]

A federal court cannot redetermine the credibility of witnesses whose demeanor has been

observed by the state trial court. See *Marshall v. Lonberger*, 459 U.S. 422, 423, 103 S.Ct. 843,

74 L.Ed.2d 646 (1983); *Sumner v. Mata*, 455 U.S. 591, 597, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982). As noted above, the state court's credibility determinations are afforded deference on federal *habeas* review. 28 U.S.C. §2254(d)(2) and (e)(1); see also *Coleman v. Quarterman*, 456 F.3d 537, 541 (5th Cir.2006); *Guidry v. Dretke*, 397 F.3d 306, 326 (5th Cir.2005), *cert. denied*, 547 U.S. 1035, 126 S.Ct. 1587, 164 L.Ed.2d 326 (2006).

Here, the trial judge accepted Detective Ortego and Gibson's version of events and not the assertions of the petitioner, as evidenced by the district court's denial of the Motion to Suppress.  The court of appeals reviewed the entire record and opined that the district court made a credibility determination when it chose to believe the testimony of the officers. Petitioner has not shown that these conclusions were unreasonable, and indeed, the transcript of the Motion to Suppress supports the implicit  findings of the district court and the explicit findings of the appeals court.[11] Again, petitioner has not shown that these findings and conclusions are unreasonable and therefore dismissal of this claim is also recommended.

## 5. Conclusion

---

[11] Detective Ortego testified:  that petitioner did not mention that he wanted to consult an attorney [doc. 7-3, p. 13; p. 15; p. 16]; and, that there were no promises made to petitioner to encourage him to confess [Id., p. 14]. Det. Gibson testified that he advised petitioner of his *Miranda* rights and made sure that petitioner understood his rights before interrogation began [doc. 7-3, p. 19]; that at no time did petitioner indicate that he did not wish to speak to the detectives [Id.]; that petitioner did not request an attorney [doc. 7-3, p. 20]; that no promises were made to petitioner to encourage him to confess, other than the detective's statement that he would advise the District Attorney that petitioner was cooperative [doc. 7-3, pp. 20-21]; that the detectives had no discussions with petitioner prior to the interview except to advise him of his rights and to advise him of the nature of their investigation and of the evidence indicating him as a suspect [doc. 7-3, pp. 22-24]; that petitioner did not request counsel [doc. 7-3, pp. 24-25]; that there were no promises made to the petitioner [doc. 7-3, p. 25]; and, that specifically, there was no promise made of a particular sentence [doc. 7-3, pp. 25-27].  Petitioner, of course, testified that he did request an attorney and indicated in the course of the interrogation that he wanted to stop. [doc. 7-2, pp. 33-34] He also testified that the officers promised him a plea bargain where he would only have to serve 10 years. [doc. 7-3, p. 35] He testified that Det. Ortego also promised assistance. [doc. 7-2, p. 36] At the conclusion of the hearing, Det. Gibson reiterated that no promises were made to petitioner, other than the promise that his cooperation and his desire for treatment of his drug addiction would be made known to the District Attorney. [doc. 7-3, pp. 46-52]

20

As previously noted, *habeas corpus* relief is not available to a state prisoner on a claim which was adjudicated on the merits in State court proceedings unless the adjudication of the claim – "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1) and (2)." All of petitioner's federal claims were adjudicated on the merits in either the Fifteenth Judicial District Court or the Third Circuit Court of Appeals.  Petitioner has not shown that the decisions of those courts involved an unreasonable application of Federal law; nor has he shown that the decisions of those courts were based on an unreasonable determination of the facts.

Therefore,

**IT IS RECOMMENDED** that this petition for *habeas corpus* should be **DENIED AND DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal**

21

conclusions accepted by the District Court, except upon grounds of plain error.  See,

*Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).

Signed at Lafayette, Louisiana, on April 28, 2008.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)